UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:

MARK GRAY and ELIZABETH GRAY,

     Plaintiffs,

v.

AMERICAN MARINE DESIGN CORPORATION
d/b/a INSETTA BOATWORKS, a Florida corporation,

     Defendant.

_____/

## PLAINTIFFS' ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs MARK GRAY and ELIZABETH GRAY (collectively "Plaintiffs") by and through their undersigned counsel, bring this Original Complaint and Demand for Jury Trial against AMERICAN MARINE DESIGN CORPORATION d/b/a INSETTA BOATWORKS ("Insetta Boatworks")[1], and state as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs Mark Gray and Elizabeth Gray are individuals who reside, and are domiciled in, Texas.

2.     Insetta Boatworks is a for-profit corporation organized and existing under the laws of the State of Florida with its headquarters in 119 Industrial Drive, St. Mary's, Georgia, 31558. It may be served with summons and complaint via its registered agent, Kevin B. Cook, 818 AIA North, Suite 302, Ponte Vedra Beach, Florida 32082, or wherever it may be found.

---

[1] Plaintiff and Insetta Boatworks shall be collectively referred to as the "Parties."

3.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of diverse states.

4.      This Court also has original subject matter jurisdiction under 28 U.S.C. § 1331 pursuant to the Magnuson-Muss Warranty-Federal Trade Commission Improvement Act ("Magnuson-Moss Warranty Act"), 15 U.S.C. § 2310, *et seq*., and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Magnuson-Moss Warranty Act.

5.      Venue is proper in this District pursuant to U.S.C. § 1391(b) because the Parties' contracted that "[t]he exclusive jurisdiction and venue for any court action commenced by [Plaintiffs] under or relating to [the] Limited Warranty or any implied warranty(ies) shall be decided in . . . the United States District Court, Middle District of Florida, Jacksonville Division." *See* Limited Warranty, attached hereto as **"Exhibit 1."**

## GENERAL ALLEGATIONS

6.      Plaintiff Mark Gray has owned and operated inshore and offshore watercraft for over fourteen (14) years. In fact, Plaintiff Mark Gray has been around and heavily involved in boats almost his entire life.

7.      Plaintiff Mark Gray purchased his first offshore boat in 2009, which operated for many years without any major issues. It is undisputed that Plaintiffs are far from novices when its comes to offshore boats.

8.      In 2016–2017, Plaintiffs decided it was time to purchase a new offshore fishing boat to continue the family's passion for offshore fishing in the Texas gulf coast. In particular, the

Plaintiffs desired an offshore boat that could handle the gear and equipment needed for overnight offshore trips.

9.      After exploring a number of options, Plaintiffs entertained a pitch from Insetta Boatworks regarding the Insetta 45 with a Yanmar diesel package.

10.     Insetta Boatworks' pitch and representations to Plaintiffs were based upon the one and only boat Insetta Boatworks had built at the time ("Model Boat").

11.     Insetta Boatworks represented to Plaintiffs that the Model Boat entered numerous fishing tournaments along the gulf coast and had been run "thousands" of hours without issue.  In fact, Insetta Boatworks hosted Plaintiffs on the Model Boat multiple times (and allowed Plaintiffs to test drive the Model Boat) as a representation of what Insetta Boatworks would build for Plaintiffs were Plaintiffs to decide to purchase a boat from Insetta Boatworks.

12.     Plaintiffs expressed their requirements to Insetta Boatworks (i.e. overnight trip capability, handle significant gear and equipment, etc.), which Insetta Boatworks represented that Plaintiffs' purchased boat would easily be able to handle, and was allegedly built for.

13.     Based upon Insetta Boatworks' representations as to its expertise in offshore boat building and the qualities of an Insetta Boatworks purchase, in March 2017, Plaintiffs signed a Purchase Agreement for the purchase of a custom-built, 45-foot catamaran (the "Vessel") for the sum of $741,620.00 ("Purchase Agreement"). *See* Purchase Agreement, attached hereto as **"Exhibit 2."**

14.     The Purchase Agreement memorialized the Parties' transaction for the sale and purchase of the Vessel.

15.     As mandated by the Purchase Agreement, Plaintiffs were to receive delivery of the Vessel by no later than November 2017.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

16.     Insetta Boatworks represented to Plaintiffs that Insetta Boatworks intended to display the Vessel at the Fort Lauderdale Boat Show in October 2017. However, Insetta failed to complete construction of the Vessel by that time.  Therefore, November 2017 came and went without delivery.

17.     Insetta Boatworks then represented to Plaintiffs that the Vessel would be ready for and displayed at the February 2018 Miami Boat Show.  Relying on that representation, Plaintiffs flew to and attended the Miami Boat Show. However, again, Insetta Boatworks did not have the Vessel completed, and therefore it was not displayed at the Miami Boat Show.

18.     In early May 2018, Plaintiffs flew to Insetta Boatworks' headquarters in St. Mary's, Georgia based upon the representation that the Vessel would finally be completed and ready for Plaintiffs to take delivery at that time. However, yet again, the Vessel was still not complete.

19.     In April 2018, the Vessel still had a number of systems that were not functioning / completed, including but not limited to the A/C system, the autopilot, and the sea frost unit. Additionally, none of the Vessel's equipment had been configured, calibrated or tested by Insetta.

20.     The Vessel was not delivered to Plaintiffs until on or about May 23, 2018 – approximately fourteen (14) months after the Parties entered into the Purchase Agreement.

21.     Almost immediately after taking possession on or about May 23, 2018, and between June 7, 2018, Plaintiffs discovered mechanical, design, construction, installation and structural defects with the Vessel, including, but not limited to:

      a.     The Vessel's two air-conditioning units failed while traveling on plane;

      b.     The Vessel's pumps would lose their prime;

      c.     The Vessel's mount for the bait freezer unit failed (and most likely permanently damaged the unit as it still does not work correctly);

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

d.     The Vessel's live wells overflowed because the drains were not configured correctly;

e.     The Vessel's house batteries lost their charge and fuses kept blowing;

f.     The Vessel's chart plotters would shut off periodically, as the house battery/charging system stopped functioning;

g.     The Vessel's bilge pumps did not work correctly;

h.     The Vessel's mount for the FLIR system failed;

i.     The Vessel's fuel gage was not configured/calibrated;

j.     The Vessel's temperature sensor failed on its port engine;

k.     The Vessel's port engine overheated while offshore and was rendered inoperable; and

l.     The Vessel's transom door continuously jammed.

22.     In July 2018, the Vessel's port engine overheated while offshore, prompting Plaintiffs to travel back to shore with one engine.

23.     Plaintiffs informed Insetta Boatworks of these aforementioned issues, and, as a result of this notification, Insetta Boatworks planned to return to Port O'Connor, Texas to perform repairs on the Vessel.

24.     During this first repair, Insetta Boatworks attempted to repair and replace the Vessel's impeller, which Insetta Boatworks originally claimed was the cause of the Vessel's engine overheating.

25.     On or about August 27, 2018, the Vessel's windshield cracked and loosened. *See* Emails, attached hereto as **"Exhibit 3."**

26.     On or about October 19, 2018, Insetta Boatworks replaced the Vessel's windshield; however, the replacement windshield was incorrectly fitted, and, accordingly, was not properly repaired. *Id.*

27.     On or about October 28, 2018, the Vessel's starboard spray rail failed while Plaintiffs were fishing offshore. This defect caused severe damage to the hull. Plaintiffs communicated this issue to Insetta Boatworks. *See* Emails, attached hereto as **"Exhibit 4."**

28.     On or about November 26, 2018, Insetta Boatworks picked up the Vessel from Port O'Connor and transported it to St. Mary's, Georgia, for repair.  Soon thereafter, Plaintiffs notified Insetta Boatworks of a laundry list of defects that plagued the Vessel that needed immediate and attention and repair. *See* Emails, attached hereto as **"Exhibit 5."** Accordingly, Insetta Boatworks retained possession of the Vessel from on or about November 26, 2018, through May 23, 2019, to allegedly perform repairs.

29.     On or about May 24, 2019, Insetta Boatworks returned the Vessel to Plaintiffs' possession at Port O'Connor, Texas.

30.     On or about May 28, 2019, through June 4, 2019, Plaintiffs used the Vessel for the first time after regaining possession from Insetta Boatworks. Unfortunately, the Vessel still had a number of issues, including but not limited to its port engine overheated, exhaust systems failed, and its chart plotters were not properly configured. Plaintiffs also suddenly noticed severe corrosion on various parts of the engine compartment.

31.     Shortly thereafter, Insetta Boatworks representative Joel Shine ("Mr. Shine") alleged that Plaintiffs were overdue for scheduled maintenance – an attempt to place blame onto Plaintiffs in order to cover up Insetta Boatworks' failures in providing efficient and effective repairs. Plaintiffs were dumbfounded, and in response, reminded Mr. Shine that Insetta Boatworks

6

possessed the Vessel for the previous seven (7) months. Further, Plaintiffs affirmed that the Vessel's impellers were replaced as recently as the prior summer by, none other than, Insetta Boatworks. Plaintiffs even went above their call of duty and performed self-testing and checks at Insetta Boatworks' behest. *See* Emails, attached hereto as **"Exhibit 6."**

32.     Plaintiffs documented the Vessel's overheating issues while traveling in the Gulf Intracoastal Waterway ("ICW"). Around this time, it was determined that the Vessel needed to be trailered so that a mechanic could assess the Vessel's underlying issues and problems. *See* Emails, attached hereto as **"Exhibit 6 and Exhibit 7**."

33.     On or about June 7, 2019, Plaintiffs took the Vessel out onto the ICW. Like clockwork, the Vessel again experienced mechanical, design, construction, installation and structural issues, including but not limited to:

      a.      The Vessel's shore power breaker tripped;

      b.      The Vessel's inverter display an error signal;

      c.      The Vessel's stereo malfunctioned and stopped working properly, only turning on-and-off intermittently;

      d.      The Vessel's drive trims stopped working;

      e.      The rear strut on the Vessel's port engine hatch strut came off; and

      f.      The Vessel's chart plotters lost all power while fishing offshore.

34.     Plaintiffs informed Insetta Boatworks, specifically Mr. Shine, that the shore power was undersized for the loads on the boat and that the drive trim acted up while Insetta had possession of the boat in Florida. *See* Emails, attached hereto as **"Exhibit 8."**

35.     Beginning on or about June 10, 2019, through June 26, 2019, Insetta Boatworks arranged for a mechanic to assess the Vessel's underlying issues. Insetta Boatworks' mechanic

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

determined that the Vessel had an exhaust leak, which was due to the Vessel's defective and faulty exhaust system. Moreover, Plaintiffs informed Insetta Boatworks of outstanding issues that remained unfixed or unremedied, including, but not limited to:

   a.   The Vessel's air-condition units emitted an unknown scent or smell that could also be found in the bilge area under the console;

   b.   A rod holder in the transom overheated and, in turn, heated the butt of a rod (and burned Plaintiffs' cousin's leg while fishing offshore);

   c.   Many of the Vessel's fuses in the charging system were undersized;

   d.   The Vessel's engine overheating and exhaust system issues were not resolved;

   e.   The Vessel's starboard engine hatch strut broke; and

   f.   Insetta Boatworks' mechanic observed an oil leak; however, the Vessel's port engine oil whip was not installed properly to allow for the oil to be changed.

36.   At this point, the Vessel was unusable, unsafe and relegated to dry storage at Plaintiffs' residence in Port O'Connor, Texas.

37.   Plaintiffs communicated their frustrations and objections to Insetta Boatworks' regarding Insetta Boatworks' lack of urgency in addressing the Vessel's issues. Plaintiffs made known that they had zero confidence in the Vessel's reliability.

38.   Insetta Boatworks' mechanic was to arrive on June 20, 2019 to replace smart sticks and to continue to diagnose overheating issues.  The mechanic determined that the port engine had an exhaust leak and ordered replacement parts. Further, at this time, Mr. Shine admitted that the Vessel's shore power was undersized.  Plaintiffs provided Insetta Boatworks with photos of

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

corroded/disintegrated exhaust clamps. *See* Emails, attached hereto as **"Exhibit 9"** and **"Exhibit 39."**

39.     On or about June 18, 2019, Plaintiffs communicated to Insetta Boatworks that the Vessel had improper wrap repairs and hard top quality issues. Plaintiffs, once again, expressed their dissatisfaction with the Vessel's recurring issues. *See* Emails, attached hereto as **"Exhibit 10."**

40.     On or about June 19, 2019, Plaintiffs received an email from Mr. Shine regarding re-configuration of the Vessel's shore power service. *Id.*

41.     On or about June 27, 2019, Insetta Boatworks' mechanic attempted to install and replace some of the Vessel's failed exhaust components.  However, this did not resolve overheating.

42.     On or about June 30, 2019, the Vessel's drive oil reservoir leaked and Plaintiffs reported to Insetta Boatworks black smoke emanating from the exhaust. As a result of these issues, Plaintiffs pulled the Vessel out for Insetta Boatworks' mechanic to perform further repairs. *See* Emails, attached hereto at **"Exhibit 11."**

43.     On or about July 1, 2019, Plaintiffs received a response email from Insetta Boatworks representative Jeffrey Spangler informing Plaintiffs that a potential cause of overheating issues arose from the Vessel's aftercoolers. *See* Emails, attached hereto as **"Exhibit 12."**

44.     On or about July 8, 2019, Insetta Boatworks' mechanic determined that the Vessel's trim pumps and trim relays were also faulty.  Plaintiffs also informed Insetta Boatworks that the Vessel's windshield was not clear as a normal windshield should be, a defect which decreased visibility when using the Vessel.  Further, Plaintiffs informed Insetta Boatworks that the windlass

breaker failed while Plaintiffs was out on the Vessel and, therefore, required Plaintiffs to pull up the Vessel's anchor by hand. *See* Emails, attached hereto as **"Exhibit 13"**

45.     On or about July 11, 2019, Insetta Boatworks' mechanic replaced the Vessel's steering pumps and trim relays. However, the Vessel's starboard engine continued to overheat and the Seafrost cold plate stopped working. *See* Emails, attached hereto as **"Exhibit 14."**

46.     On or about July 15, 2019, the Vessel's Drive ECU alarm continued to sound, causing Plaintiffs to add more drive oil to the starboard side reservoir. Further, notwithstanding Insetta Boatworks' recommendations on how to clean or maintain the Vessel's windshield, the Vessel's windshield continued to be unclear. Further compounding these issues, the Vessel's engine continued to overheat and Seafrost cold plate was still not functioning properly. *See* Emails, attached hereto as **"Exhibit 15."**

47.     Plaintiffs' July 15, 2019 communications prompted Insetta Boatworks to order a "Black Box." Further, Insetta Boatworks stated that the Vessel's prop pitch was a cause of overheating (this was Insetta Boatworks' purported alibi when they did not have any other answer). *Id.*

48.     On or about July 22, 2019 through August 7, 2019, Plaintiffs had back-and-forth discussions with Insetta Boatworks regarding testing of the Vessel's battery switch and recurring electrical issues.  Plaintiffs provided a detailed process regarding battery switch and shore power connection.  Once again, during this time period, the Vessel lost house power while Plaintiffs were fishing offshore. Also, Plaintiffs were forced to run the boat at lower speed/RPMs to prevent engine overheating.  Finally, ECU drive errors continued. *See* Emails, attached hereto as **"Exhibit 16."**

49.    On or about August 12, 2019, Plaintiffs continued to discuss with Insetta Boatworks the Vessel's ongoing ECU drive error alarm failures.  Plaintiffs were informed by Insetta Boatworks that this issue may have been associated with the rudder indicator (a new issue) and provided guidance on how to reset the maintenance alarm. *See* Emails, attached hereto as **"Exhibit 17."**

50.    On or about August 26, 2019 through August 29, 2019, the Vessel's battery switches continued to fail and the engine continued to overheat. *See* Emails, attached hereto as **"Exhibit 18."**

51.    On or about September 9, 2019, the Vessel's ECU Drive failure caused the Vessel's engines to de-rate, the starboard engine experienced experience turbo lag, the stereo system fails, the Vessel's steering cylinder fails, and the rudder sensor fails. *See* Emails, attached hereto as **"Exhibit 19."**

52.    On or about October 21, 2019, the Vessel's turbochargers on both engines failed, and issues with the battery switch persisted. Accordingly, the Vessel again became unusable and relegated to dry storage at Plaintiffs' home in Port O'Connor, Texas. *See* Emails, attached hereto as **"Exhibit 38."**

53.    Thereafter, Insetta Boatworks visited Texas in order to attempt additional repairs on the Vessel. It followed that Plaintiffs provided Insetta Boatworks with a list of items, issues, and defects on the Vessel that needed repair.

54.    Between on or about November 5, 2019 and December 13, 2019, Insetta Boatworks stationed the Vessel in Rockport, Texas for repairs. At this point, the Vessel's engines had only 270 logged hours. *See* Emails, attached hereto as **"Exhibit 20."**

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

55.     On or about December 12, 2019, Plaintiffs received an email from Mr. Shine stating that the Vessel was ready to be picked up, and on or about December 13, 2019, Plaintiffs regained possession of the Vessel.

56.     Shortly after regaining possession of the Vessel, Plaintiffs discovered that Insetta Boatworks did not repair the fusion stereo head, and many of the issues first experienced in 2019 remained unresolved.

57.     On or about December 29, 2019, Plaintiffs took the Vessel out for the first time since being picked up on or about December 13, 2019. However, Plaintiffs discovered that the Vessel's starboard tilt did not work; a drive ECU failure alarm sounded; and the battery switch/house power issue remains.  These issues have persisted since Insetta Boatworks delivered the Vessel in May 2018. *See* Emails, attached hereto as **"Exhibit 21."**

58.     On or about January 27, 2020, the Vessel's starboard smart stick was again replaced to correct the starboard trim issue. Insetta Boatworks asked Plaintiffs to do more testing regarding the battery switch/electrical issues.  It was determined that the house batteries were dead due to the Vessel's defects.

59.     On or about January 29, 2020, Plaintiffs express their continued concerns to Insetta Boatworks regarding the battery switch/electrical system, as this issue persisted with absolutely no sense of urgency from Insetta Boatworks.  As a result, Plaintiffs continued to have no confidence that the Vessel was reliable and could be operated.

60.     On or about May 29, 2020, Insetta Boatworks informed Plaintiffs that Blue Sea Systems was not able to repair the Vessel's electrical systems, thereby confirming that there were material issues with the Vessel's electrical systems and that Insetta Boatworks had no idea what they were. *See* Emails, attached hereto as **"Exhibit 22."**

61.    On or about April 11, 2020, Plaintiffs took the Vessel out on the ICW for about two-hours. However, the Vessel's engines again overheated, its exhaust system failed and reduced the Vessel's performance. Apart from overheating of the engine due to, *inter-alia*, the Vessel's defective, faulty and improperly installed exhaust system, the Vessel experienced issues with its engines, battery switches/electrical systems. Although Plaintiffs communicated these issues to Insetta Boatworks, Plaintiffs received no response. *See* Emails, attached hereto as **"Exhibit 23."**

62.    Beginning on or about May 29, 2020 through June 2, 2020, Insetta Boatworks suddenly began blaming the Vessel's overheating issues on improper prop size.  However, Insetta Boatworks was sole decider that determined which props to use.  Further, Plaintiffs received a video from Jeffrey Spangler confirming that the Vessel's top speed was reduced by 5 knots. *Id.*

63.    On or about June 11, 2020, Plaintiffs requested an update from Insetta Boatworks regarding resolution of the battery switch/house battery issue. *Id.*

64.    On or about June 16, 2020, Plaintiffs awaited resolution of the Vessel's battery switch/house battery issue. *See* Emails, attached hereto as **"Exhibit 23."**

65.    On or about June 18, 2020, Plaintiffs received an email from Insetta Boatworks employee Jeffrey Spangler blaming the Vessel's dead battery and battery switch issues on shore power.  However, this was later determined to be not true. *See* Emails, attached hereto as **"Exhibit 24."**

66.    On or about June 19, 2020, it was determined that one of the Vessel's house batteries was dead and unrecoverable.  This issue had occurred many times before. *Id.* Further, Plaintiffs sent an email to Jeffrey Spangler asking, once again, for a plan to correct the Vessel's engine overheating and electrical system issues. Instead of providing truthful and accurate

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

representations, Insetta Boatworks continuously misled Plaintiffs regarding the Vessel's electrical issues. *See* Emails, attached hereto as **"Exhibit 24 and Exhibit 25."**

67. On or about June 24, 2020, Plaintiffs sent an email to Insetta Boatworks detailing the Vessel's continued issues, Insetta Boatworks' lack of urgency and Insetta Boatworks' lack of success in remedying those issues that deprived Plaintiffs of the value and enjoyment of their purchase. It was clear that the Vessel was a "lemon," or a dud, and Plaintiffs requested that Insetta Boatworks refund the entire purchase price and take the Vessel back. *See* Emails, attached hereto as **"Exhibit 26."**

68. On or about July 9, 2020, Insetta Boatworks declined Plaintiffs' request for a full refund.

69. Beginning on or about July 21, 2020, through July 22, 2020, Plaintiffs communicated to Insetta Boatworks that the Vessel's spray rail failed for a second time and sent photographs documenting same. Further, the Vessel's electronic systems/components continued to experience issues that have remained unremedied by Insetta Boatworks.

70. Although the Vessel's house battery was replaced on or about July 15, 2020, the Vessel's low voltage alarm sounded, indicating that the issue was, in fact, not resolved. Further, the Vessel's engine continued to overheat and affect performance. *See* Emails, attached hereto as **"Exhibit 27."** Insetta Boatworks again attempted to place blame for engine overheating on prop size, even though Insetta Boatworks was responsible for proper prop sizing, and even though Insetta Boatworks' defective, faulty and improperly installed exhaust system on the Vessel was one of the causes of the Vessel's operational failures.

71. On or about July 27, 2020, through July 28, 2020, Plaintiffs continued to discuss with Insetta Boatworks the Vessel's battery switch/electrical system and engine overheating

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

issues.  Plaintiffs forwarded an email to Insetta Boatworks from July 15, 2019 that previously instructed Plaintiffs to install the props that were currently on the Vessel. In fact, this same prop configuration was installed on the boat when Insetta Boatworks had possession of the Vessel in Rockport, Texas.  A video sent by Jeffrey Spangler showed reduced performance.  Surely, if Insetta Boatworks thought the props should have been changed, they should have done it at that time. *See* Emails, attached hereto as **"Exhibit 28."**

72.     On or about July 30, 2020, Sonny's Marine determined that the P12 battery charger was not working. Accordingly, Insetta Boatworks ordered a replacement charger. *See* Emails, attached hereto as **"Exhibit 29."**

73.     On or about August 1, 2020, Plaintiffs noticed exhaust soot on the port side engine hatch, the presence of which indicated another exhaust system failure.  At this time, Plaintiffs asked Insetta Boatworks for a response to Plaintiffs' previous request for a full refund. *See* Emails, attached hereto as **"Exhibit 30."**

74.     On or about August 2, 2020, Plaintiffs waited at their home for a battery charger to be delivered by Insetta Boatworks, however, that also did not arrive as planned. *See* Emails, attached hereto as **"Exhibit 31."**

75.     On or about August 3, 2020, Insetta Boatworks informed Plaintiffs that Insetta Boatworks would not take back the Vessel.  In response, Plaintiffs provided Insetta Boatworks with a laundry list of ongoing issues including, continued spray rail defects, continued engine overheating, continued exhaust system failures, and continued electrical issues.  Plaintiffs made known to Insetta Boatworks that Plaintiffs were not comfortable running the Vessel until the issues were resolved. *Id.*  It was also discovered that Insetta Boatworks failed to properly size and install

a grass/sea strainer on the Vessel, which also contributed to the Vessel's operational failures and overheating issues.

76.     On or about August 4, 2020, through August 5, 2020, Insetta Boatworks informed Plaintiffs that a Yanmar technician was scheduled to perform repairs on or about August 18, 2020. Further, Plaintiffs and Insetta Boatworks discussed replacing the Vessel's spray rail. *See* Emails, attached hereto as **"Exhibit 32."**

77.     On or about August 10, 2020, Plaintiffs asked Insetta Boatworks for an updated status of the Vessel's spray rail repair and battery charger replacement. *See* Emails, attached hereto as **"Exhibit 35."**

78.     On or about August 18, 2020, Plaintiffs asked Insetta Boatworks for an update regarding the status of battery charger installation. A Yanmar technician confirmed that the Vessel's exhaust system failed again and would provide a parts list to Insetta Boatworks.

79.     Plaintiffs continued their back-and-forth communications with Insetta Boatworks regarding the failed spray rail and battery charger installations. Surprisingly, Insetta Boatworks proffered that the exhaust parts failure is on the "Yanmar side" and recommended removing the spray rails entirely.  *See* Emails, attached hereto as **"Exhibit 34."**

80.     On or about August 19, 2020, Insetta Boatworks once again recommended removal of the spray rail but could not confirm to Plaintiffs the resulting performance change from that repair and modification. Further, an electrician confirmed that there were no issues with the Vessel's dockside shore power connection. *See* Emails, attached hereto as **"Exhibit 35."**

81.     On or about August 24, 2020, the Vessel's battery charger still awaited repair, as it had been three weeks since it was diagnosed. Further, Vessel's spray rail remained uncorrected. In turn, Plaintiffs asked for the parts list submitted by Insetta Boatworks to Mastry Engine Center

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

along with Mastry Engine Center's contact information.  *See* Emails, attached hereto as **"Exhibit 36."**

82.     On or about August 24, 2020, through August 27, 2020, Plaintiffs sent photos of the Vessel's exhaust system failures to Insetta Boatworks.  Insetta Boatworks refused to make the required repairs in order to remedy the defects.  Further adding insult to injury, Insetta Boatworks attempted to place blame on Plaintiffs for the Vessel's exhaust system failure. *See* Emails, attached hereto as **"Exhibit 37."**

83.     On or about September 3, 2020, CB Marine & Supply, LLC sent Plaintiffs an invoice for repairs that were performed on the Vessel that Insetta Boatworks refused to cover. *Id.*

84.     Numerous issues still persist with the Vessel, including but not limited to the following:

        a.     the Vessel's exhaust system remains unrepaired;

        b.     the Vessel's house battery has died and is unrecoverable;

        c.     The Vessel's spray rails have been removed;

        d.     The Vessel's gel coat has been patched and is not aesthetically compatible with the remaining portions of the Vessel;

        e.     The Vessel's wrap is damaged on both sides due to the spray rail removal;

        f.     The Vessel's engine continues to overheat;

        g.     The Vessel's engine hatch struts have failed again;

        h.     The Vessel's grass/sea strainer is improperly sized and installed;

        i.     The Vessel's Sea Frost unit has stopped working.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

85.     Additionally, Insetta Boatworks' defectively, negligently and improperly designed the hull of the Vessel, which detrimentally impacted the Vessel's performance, including without limitation the Vessel's exhaust system.

86.     Further, Insetta Boatworks deviated from the design of the Model Boat when building the Vessel, and made a number of unproven, and frankly novel, design and construction changes to the Vessel, including without limitation the defective design, construction, manufacturing and installation of the spray rails and defective design and construction of the exhaust system.   Such deviations and defective design, construction, manufacturing and installation were causes of the Vessel's malfunctions and technical issues, including without limitation the exhaust system issues.  Insetta Boatworks represented to Plaintiffs that the Vessel would be designed and manufactured in accordance with the Model Boat.  However, that turned out to not be the case.

87.     Many of the Vessel's exhaust system components are made from stainless steel and were represented by Insetta Boatworks to last thousands of hours.  Yanmar diesel engines are also historically known to last ten thousand hours if put through strenuous use, and much longer if used normally.  The fact that the Vessel's exhaust system failed from day one (even though Insetta Boatworks replaced one side of the Vessel's exhaust system once, and the other side twice) is clear evidence that Insetta Boatworks defectively, negligently and improperly designed, installed and/or manufactured the Vessel.

88.     Furthermore, the Vessel's electrical system continues to fail, even though the Vessel's batteries have already been replaced a number of times.  Plaintiffs cannot get the Vessel out past the jetties in Port O'Connor, Texas without numerous alarms on the Vessel going off.  To

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

make things worse, the Vessel's windshield and Air Conditioning system were defectively designed/manufactured/installed, and pose a significant safety hazard to those onboard the Vessel.

89.     There are almost no parts or systems on the Vessel that have not failed at some point during the Vessel's short 300 hours of use.  The Vessel is anything but reliable.  Even the Vessel's first voyage, in which an Insetta Boatworks representative was aboard, was littered with mechanical and operational issues. Insetta Boatworks' improper and negligent attempts to remedy the issues with the Vessel have only consisted of replacing parts after parts, and have in fact exacerbated the problems with the Vessel.   Insetta Boatworks failed to thoroughly test the Vessel prior to delivering it to Plaintiffs, and failed to properly test it after attempting to make repairs and retaking possession of the Vessel. While there are numerous problems with the Vessel's components, the underlying issue is Insetta Boatworks' defective design and manufacturing of a completely unproven and untested watercraft as a whole.

90.     Insetta Boatworks failed to provide the benefit of the bargain to Plaintiffs, and the Vessel did not conform to the representations of Insetta Boatworks to Plaintiffs both prior to and after the sale, construction, delivery and attempted repairs of the Vessel.   Instead, Insetta Boatworks treated Plaintiffs as a guinea pig, manufacturing and designing a watercraft that was unproven, untested, and a far cry from the design of the Model Boat.  Plaintiffs relied on Insetta Boatworks' representations regarding the Model Boat when purchasing the Vessel.  However, Insetta Boatworks' representations to Plaintiffs turned out to be falsifications as to the product Insetta Boatworks claimed it would provide to Plaintiffs.  Upon information and belief, this is not the first time Insetta Boatworks has provided a defective product to a customer.  Apparently, Insetta Boatworks sold a boat to an individual in Louisiana, but it was littered with issues similar to the Vessel.  However, Insetta Boatworks re-took possession of the Louisiana customer's boat

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

and refunded the customer from Louisiana.  Additionally, upon information and belief, Insetta Boatworks is no longer building the Insetta 45 that it sold to Plaintiffs, primarily because of the significant design flaws and issues therewith.   Such is just another example of the misrepresentations and breaches of Florida and Federal law that Insetta Boatworks has committed against Plaintiffs, which continue daily.

## COUNT I
## BREACH OF CONTRACT

91.    Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

92.    Plaintiffs and Insetta Boatworks entered into the Purchase Agreement, which included but was not limited to an express Limited Warranty.

93.    The Purchase Agreement and express Limited Warranty constitute a valid and enforceable contract.

94.    At all times since the commencement of the Purchase Agreement and express Limited Warranty, Plaintiffs honored all of their obligations and satisfied all conditions preceding under their agreement with Insetta Boatworks.

95.    Specifically, per the terms of the Purchase Agreement and express Limited Warranty, Plaintiffs properly documented all noncomformities and defects to Insetta Boatworks in writing and provided notice to Insetta Boatworks of those nonconformities and defects within the prescribed time periods to do so.

96.    Per the terms of the Purchase Agreement and express Limited Warranty, Insetta Boatworks was contractually bound to repair and/or replace all noncomformities and defects in the materials, workmanship, and structure of the Vessel.

97.     Insetta Boatworks breached the terms of the Purchase Agreement and express Limited Warranty by failing to permanently cure or remedy the noncomformities or defects that were properly documented and reported to Insetta Boatworks.

98.     As a proximate cause of Insetta Boatworks' breach, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

## COUNT II
## BREACH OF EXPRESS WARRANTY

99.     Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

100.    The allegations sufficiently demonstrate that Plaintiffs purchased the Vessel from Insetta Boatworks, a transaction involving the sale of goods.

101.    Insetta Boatworks breached the express Limited Warranty because the Vessel experienced numerous noncomformities and defects which remained unrepaired or unremedied, demonstrated *supra*.

102.    At all times since the commencement of the express Limited Warranty, Plaintiffs honored all of their obligations and satisfied all conditions preceding under the agreement with Insetta Boatworks.

103.    Specifically, per the terms of the express Limited Warranty, Plaintiffs properly documented all noncomformities and defects to Insetta Boatworks in writing and provided notice to Insetta Boatworks of those nonconformities and defects within the prescribed time periods to do so.

104.    Per the terms of the express Limited Warranty, Insetta Boatworks was contractually bound to repair and/or replace all noncomformities and defects in the materials, workmanship, and structure of the Vessel.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

105.     Insetta Boatworks breached the terms of the express Limited Warranty by failing to permanently cure or remedy the noncomformities or defects that were properly documented and reported to Insetta Boatworks.

106.     Further, Plaintiffs informed Insetta Boatworks of the breach of express Limited Warranty prior to instituting this action.

107.     As a proximate cause of Insetta Boatworks' breach, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

108.     Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

109.     The allegations sufficiently demonstrate that Plaintiffs purchased the Vessel from Insetta Boatworks, a transaction involving the sale of goods.

110.     Plaintiffs and Insetta Boatworks were in privity based on the Purchase Agreement.

111.     Insetta Boatworks knew of Plaintiffs' intended use of the Vessel; however, the Vessel did not function properly and was not constructed correctly, as demonstrated *supra*, when the Vessel left Insetta Boatworks' manufacturing facility.

112.     Insetta Boatworks knew that Plaintiffs were foreseeable users of the Vessel based on the parties' communications that the Vessel was to be used by Plaintiffs for offshore fishing trips.

113.     Insetta Boatworks' failure to provide Plaintiffs with a properly working Vessel upon delivery, and the subsequent noncomformities that ensued, were both a direct and proximate cause of Plaintiffs' damages, as it was reasonably foreseeable that Insetta Boatworks' failure to provide a non-defective good deprived Plaintiffs of their benefit of the bargain.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

114.    As a proximate cause of Insetta Boatworks' breach, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE**

115.    Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

116.    The allegations sufficiently demonstrate that Plaintiffs purchased the Vessel from Insetta Boatworks, a transaction involving the sale of goods.

117.    Plaintiffs and Insetta Boatworks were in privity based on the Purchase Agreement.

118.    Insetta Boatworks knew of Plaintiffs' intended use of the Vessel as a basis for the sale between the parties; however, the Vessel did not function properly and was not constructed correctly, as demonstrated *supra*, when the Vessel left Insetta Boatworks' manufacturing facility.

119.    Plaintiffs purchased the Vessel in order to take part in offshore fishing trips in direct reliance on Insetta Boatworks' representations.

120.    Insetta Boatworks knew that Plaintiffs were foreseeable users of the Vessel based on the parties' communications that the Vessel was to be used by Plaintiffs for offshore fishing trips.  Insetta Boatworks represented that the Vessel would be of the same nature as the Model Boat.  However, it turns out that it was not.

121.    Insetta Boatworks' failure to provide Plaintiffs with a properly working Vessel upon delivery, and the subsequent noncomformities that ensued, were both the direct and proximate cause of Plaintiffs' damages, as it was reasonably foreseeable that Insetta Boatworks' failure to provide a non-defective good deprived Plaintiffs of their benefit of the bargain.

122.    As a proximate cause of Insetta Boatworks' breach, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

## COUNT V
## BREACH OF MAGNUSON-MOSS WARRANTY ACT, *15 U.S.C. § 2310(d)(1)*

123.    Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

124.    The Magnuson-Moss Warranty Act gives consumers a private right of action against warrantors for breach of warranty, as defined by state law.

125.    Insetta Boatworks breached its warranties to Plaintiffs, including but not limited to the express Limited Warranty because the Vessel experienced numerous noncomformities and defects which remained unrepaired or unremedied, demonstrated *supra*.

126.    As documented, Insetta Boatworks was given reasonable and more than adequate opportunities to cure the Vessel's defects.

127.    However, Insetta Boatworks failed to permanently cure the defects within a reasonable time or a reasonable number of attempts, therefore leading the Vessel to experience continued performance issues.

128.    Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).

129.    The Vessel is a "consumer product" as defined in 15 U.S.C. § 2301(1).

130.     The Vessel was manufactured and purchased after July 4, 1975.

131.    The express Limited Warranty is a "written warranty" as defined in 15 U.S.C. § 2301(6).

132.    Insetta Boatworks is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4), (5).

133.    The Vessel's failures are the direct result of multiple defects in manufacturing, workmanship, installation, construction, design, and/or materials by Insetta Boatworks.

134.    The above-described failures and issues could not have reasonably been discovered

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

by Plaintiffs prior to Plaintiffs' purchase of the Vessel.

135.    Insetta Boatworks' warranties, including but not limited to the express Limited Warranty, were part of the basis of the bargain of the contract, upon with Plaintiffs relied, for the purchase of the Vessel.

136.    The Vessel has not been properly repaired under the warranties, including but not limited to the express Limited Warranty and continues to be in a defective condition through no fault of Plaintiffs.

137.    Insetta Boatworks' failure or refusal to adequately repair the Vessel is a breach of the warranties, including but not limited to the express Limited Warranty.

138.    The warranties, including but not limited to the express Limited Warranty, have failed their essential purposes.

139.    As a result of Insetta Boatworks' breach, Plaintiffs has suffered, expenses, losses, and damages, at minimum of $741,620.00.

140.    Unlike other consumer goods, the Vessel naturally depreciated the moment after Plaintiffs purchased the Vessel, and has continued to depreciate thereafter, all through no fault of Plaintiffs.

141.    Plaintiffs are now faced with the reality that Insetta Boatworks cannot or will not adequately repair the Vessel, or in the alternative, the Vessel has been subject to an unreasonable number of repair attempts.

142.    Part of the Vessel's purchase price was so Plaintiffs could enjoy the experience of using the Vessel immediately after purchase.

143.    The unrepaired defects and problems with the Vessel stole away such experience from Plaintiffs.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

144.    As a proximate cause of Insetta Boatworks' breach, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

## COUNT VI
## VIOLATION OF THE FLORIDA LEMON LAW, FLA. STAT. CH. 681, *ET. SEQ.*

145.    Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

146.    Plaintiffs are "consumers" as defined in Section 681.102(4), Florida Statutes.

147.    Insetta Boatworks is a "manufacturer" as defined in Section 681.102(13), Florida Statutes.

148.    The Vessel is a "motor vehicle" as defined in Section 681.102(4), Florida Statutes.

149.    The express Limited Warranty is a "warranty" as defined in Section 681.102(22), Florida Statutes.

150.    Plaintiffs has presented the Vessel to Insetta Boatworks for warranty repairs on more than three occasions.

151.    Plaintiffs gave Insetta Boatworks a final opportunity to cure the alleged noncomformities and defects.

152.    Insetta Boatworks failed to cure the alleged noncomformities and defects.

153.    As a proximate cause of Insetta Boatworks' breach, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

## COUNT VII
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

154.    Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

155.    Section 501.201, *et seq.* Florida Statutes, is commonly known as, and will hereinafter be referred to as the "Florida Deceptive and Unfair Trade Practices Act" or "FDUTPA."

156.    Insetta Boatworks is engaged in "Trade or Commerce" as defined in Section 501.203(8), Florida Statutes.

157.    Insetta Boatworks' representations that the Vessel would be a properly working vessel based off the capabilities of the Model Boat were false and intended to induce Plaintiffs' to enter into a business transaction with Insetta Boatworks.  Insetta Boatworks' representations that the Vessel would be a safe, functioning watercraft for Plaintiffs were false and intended to induce Plaintiffs' to enter into a business transaction with Insetta Boatworks.  The Vessel did not conform to the representations made to Plaintiffs by Insetta Boatworks.

158.    Insetta Boatworks' representations that the Vessel contained a valid warranty, which would cause effective warranty repairs to be made within a reasonable time and within the warranty period, were false.

159.    Insetta Boatworks' representations that it could fix, repair or remedy the issues with the Vessel were false and were relied upon by Plaintiffs.

160.    Insetta Boatworks' violations of Florida Law, including but not limited to the Florida Lemon Law, constitutes an unfair or deceptive act or practice violation of Section 501.204, Florida Statutes.

161.    Insetta Boatworks had a legal obligation to Plaintiffs, but instead breached, avoided and/or attempted to avoid its obligation to Plaintiffs.

162.    Insetta Boatworks exhibited a pattern of inefficiency, stalling and and/or incompetency with regard to its warranty repair work.

GORDON REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900, Miami, FL 33131

163.     Insetta Boatworks did not offer Plaintiffs complete relief as they are entitled to under Section 681.104(2) and 681.112, Florida Statutes.

164.     Insetta Boatworks used an unfair or deceptive trade practice pursuant to Section 681.111, Florida Statutes, as defined in Part II of Chapter 501, Florida Statutes.

165.     As a proximate cause of Insetta Boatworks' breach, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION

166.     Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

167.     In addition to Insetta Boatworks' failure to repair or remedy the Vessel's nonconformities, Insetta Boatworks misrepresented to Plaintiffs that Plaintiffs would be receive a fully functional and properly working watercraft, such as the purported function of the Model Boat. These representations were false.

168.     Insetta Boatworks was negligent in its representations to Plaintiffs that the Vessel would work properly.

169.     Insetta Boatworks should have known its representations were false because it failed to deliver the Vessel on time to Plaintiffs, and failed to adequately test the Vessel, knowing that it could not complete delivery of a properly working product, including but not limited to by the times specified in the Purchase Agreement.

170.     Insetta Boatworks' representations that it could timely deliver a properly working watercraft to Plaintiffs induced Plaintiffs to consummate the transaction between Plaintiffs and Insetta Boatworks for the Vessel.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

171.    Insetta Boatworks' representations that it could fix, repair or remedy the issues with the Vessel were false, made negligently and were relied upon by Plaintiffs.

172.    Further relying on Insetta Boatworks' representations, Plaintiffs were damaged in the amount of $741,620.00, a price paid to Insetta Boatworks for which Plaintiffs surely lost their benefit of the bargain.

173.    Moreover, Insetta Boatworks continuously misrepresented to Plaintiffs the cause in fact of the Vessel's problems, defects and issues.

174.    For example, Insetta Boatworks continuously reaffirmed and stated that the Vessel's props were the cause of overheating.

175.    Insetta Boatworks knew or should have known that these representations were false because the prop sizes were always determined by Insetta Boatworks, and instead the Vessel was littered with other issues.

176.    As a result, Insetta Boatworks' misrepresentations eviscerated Plaintiffs' benefit of the bargain and deprived Plaintiffs of proper use of the Vessel.

177.    As a proximate cause of Insetta Boatworks' negligent misrepresentations, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

**COUNT IX**
**FRAUDULENT MISREPRESENTATION**

178.    Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

179.    Separate and independent from Insetta Boatworks' failure to repair or remedy the Vessel's nonconformities, Insetta Boatworks misrepresented to Plaintiffs that Plaintiffs would receive a fully functional and properly working watercraft. These representations were false.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

180.    Insetta Boatworks should have known its representations were false because it knew it could not deliver a properly working Vessel on time to Plaintiffs by the times specified in the Purchase Agreement.

181.    Insetta Boatworks' representations that it could timely deliver a properly working watercraft to Plaintiffs induced Plaintiffs to consummate the transaction with Insetta Boatworks. The Vessel did not conform to the representations made to Plaintiffs by Insetta Boatworks.

182.    Moreover, Insetta Boatworks continuously misrepresented to Plaintiffs the cause in fact of the Vessel's problems, defects and issues.

183.    For example, Insetta Boatworks continuously reaffirmed stated that the Vessel's props were the cause of overheating.

184.    Insetta Boatworks' representations that it could fix, repair or remedy the issues with the Vessel were false, were made to Plaintiffs' intentionally with the intent to deceive Plaintiffs, and were relied upon by Plaintiffs.

185.    Insetta Boatworks knew or should have known that these representations were false because the prop sizes were always determined by Insetta Boatworks.

186.    As a result, Insetta Boatworks' representations eviscerated Plaintiffs' benefit of the bargain and deprived Plaintiffs of proper use of the Vessel.

187.    Further relying on Insetta Boatworks' representations, Plaintiffs were damaged in the amount of $741,620.00, a price paid to Insetta Boatworks for which Plaintiffs surely lost their benefit of the bargain.

188.    As a proximate cause of Insetta Boatworks' fraudulent misrepresentations, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

189.    The aforementioned conduct of Insetta Boatworks was intentional, deceitful and caused Plaintiffs serious financial injury.   Insetta Boatworks' conduct was malicious, and subjected Plaintiffs to a cruel and unjust hardship, including significant financial losses, in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages against Insetta Boatworks.

## COUNT X
## FRAUD IN THE INDUCEMENT

190.    Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

191.    Separate and independent from Insetta Boatworks' failure to repair or remedy the Vessel's nonconformities, Insetta Boatworks misrepresented to Plaintiffs that Plaintiffs would receive a fully functional and properly working watercraft. These representations were false.

192.    Insetta Boatworks knew or should have known its representations were false because it knew it could not deliver a properly working Vessel on time to Plaintiffs by the times specified in the Purchase Agreement.  The Vessel did not conform to the representations made to Plaintiffs by Insetta Boatworks.

193.    Insetta Boatworks' actions and representations concerning the Model Boat were intended to persuade Plaintiffs to enter into a business transaction with Insetta Boatworks.

194.    Insetta Boatworks' representation that it could timely deliver a properly working watercraft to Plaintiffs induced Plaintiffs to consummate the transaction with Insetta Boatworks.

195.    Insetta Boatworks' representations that it could fix, repair or remedy the issues with the Vessel were false, were made to Plaintiffs' intentionally with the intent to deceive Plaintiffs, and were relied upon by Plaintiffs.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

196.    Further relying on Insetta Boatworks' representations, Plaintiffs were damaged in the amount of $741,620.00, a price paid to Insetta Boatworks for which Plaintiffs surely lost their benefit of the bargain.

197.    As a proximate cause of Insetta Boatworks' fraudulent misrepresentations, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

198.    The aforementioned conduct of Insetta Boatworks was intentional, deceitful and caused Plaintiffs serious financial injury. Insetta Boatworks' conduct was malicious, and subjected Plaintiffs to a cruel and unjust hardship, including significant financial losses, in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages against Insetta Boatworks.

## COUNT XI
## NEGLIGENCE

199.    Plaintiffs incorporate the allegations from Paragraphs 1 through 90 as if fully set forth herein.

200.    In the alternative, at all times mentioned, Insetta Boatworks owed a duty to properly manufacture, design, formulate, test, product, assemble, inspect, research, distribute, market, label, prepare for use and sell the Vessel.

201.    Insetta Boatworks also had a duty to properly and reliably represent the usage, functions, and capabilities of the Vessel.

202.    Insetta Boatworks breached their duty to Plaintiff by negligently manufacturing, designing, testing, producing, inspecting, distributing, marketing, labeling, and preparing the Vessel for use as a properly functioning offshore watercraft. The Vessel, in fact was defective, and not properly constructed or completed to be safe and fully functioning for use, as Plaintiffs discovered that the Vessel was did not work properly upon first use.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

203.   Insetta Boatworks further breached their duty by negligently representing to Plaintiffs that the Vessel would work properly.

204.   Additionally, Insetta Boatworks negligently failed to repair, remedy and/or cure the issues with the Vessel during Insetta Boatworks numerous attempts to do so.  Insetta Boatworks negligent repairs and repair attempts caused further damage to the Vessel as outlined above.

205.   Insetta Boatworks' conduct foreseeably created a foreseeable zone of risk. Insetta Boatworks knew that Plaintiffs were relying on their experience as watercraft and boat manufacturers to properly manufacture, design, test, produce, inspect, distribute, market, label, and prepare the Vessel.

206.   Plaintiffs and Insetta Boatworks had a special relationship, in that, in the past, Plaintiffs had communicated with Insetta Boatworks regarding the Vessel's specifications and capabilities.

207.   As a direct and proximate cause of Insetta Boatworks' negligence and carelessness, Plaintiffs have been damaged in an amount above the minimal jurisdictional limits of this Court.

## CONDITIONS PRECEDENT

208.   All conditions precedent to maintain Plaintiffs' causes of action have been met or have been waived.

## JURY DEMAND

209.   Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment in their favor against Insetta Boatworks for the following relief:

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

1. Plaintiffs' actual damages, including but not limited to the purchase price of the Vessel, out of pocket costs, loss of value, loss of market value, loss of actual value and loss of intrinsic value;

2. All reasonable and necessary attorneys' fees and costs, along with all costs and reasonable attorneys' fees in the event of appeal;

3. All pre- and post-judgment interest thereon at the highest rate allowed by law;

4. All statutory damages;

5. All special or consequential damages;

6. All exemplary / punitive damages;

7. All costs of court; and

8. All other relief, either special or general, at law or in equity, to which Plaintiffs show themselves justly entitled.

Respectfully submitted on this 23rd day of November, 2020.

*/s/ Capri Trigo*
Capri Trigo
Florida Bar No. 28564
**GORDON REES SCULLY MANSUKHANI**
Miami Tower
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5323
Email: ctrigo@grsm.com

**COUNSEL FOR PLAINTIFFS**
**MARK GRAY AND ELIZABETH GRAY**